UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
VANCE MAXWELL,                                    NOT FOR PUBLICATION
                              Petitioner,         MEMORANDUM AND ORDER

            -against-                             04-CV-4477 (CBA)

CHARLES GREINER,
Superintendent, Greenhaven
Correctional Facility,
                              Respondent.
--------------------------------------------------------X
AMON, UNITED STATES DISTRICT JUDGE:

        Petitioner Vance Maxwell filed a *pro se* petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2254 on October 19, 2004.  After the government opposed the petition and Maxwell

replied, the Court appointed counsel to represent Maxwell for the purposes of further briefing.

For the reasons that follow, the petition is denied.

I.      **Facts and Procedural History**

        The evidence at trial established that on May 26, 1996, Maxwell, along with three other

people, robbed Victor Lambert, Ramone Avrea, and Luis Samaniego, employees of the National

Car Service in Corona, Queens.  Maxwell acted as the getaway driver for the crime.  After being

chased by the robbery victims, Maxwell abandoned his car.  He went to the police precinct later

that night claiming to have been the victim of a car-jacking in order to retrieve his car, which had

been impounded, and was identified by the victims, who had arrived at the precinct to report the

robbery.

        Maxwell was charged with and tried for three counts of Robbery in the First Degree and

Falsely Reporting an Incident in the Third Degree.  At trial, the government called witnesses to

establish Maxwell's role in the robbery.  Victor Lambert testified that on the night in question he

1

was at the National Car Service with Avrea and Samaniego and that they were robbed. He identified Maxwell as the man who stood lookout and acted as the get-away-driver. (Tr. 291-93.) Lambert said that the robbery victims got into a car and followed Maxwell's BMW. (Tr. 295-96.) Officer Munoz testified that he found the abandoned BMW in the middle of the street with the lights on and the doors open. (Tr. 384.) He brought the victims of the National Car Service robbery to the car to identify it. (Tr. 385.) He ran the VIN number of the car and it came back to Maxwell. (Tr. 387.) Later that same night, he was approached by Maxwell in the precinct and Maxwell claimed to be the victim of a carjacking. (Tr. 390-91.) Maxwell also told him that he went back to the car to get the keys but then abandoned it again, and that he did not know the individuals who carjacked him and that one put a gun to his head. (Tr. 392-94.) Munoz then brought Maxwell to the car they had recovered, and Maxwell identified it as his own. (Tr. 394.) While Munoz was talking to Maxwell, the victims' identified him and Munoz arrested him. (Tr. 395-96.) Detective Troise testified that he found a Polaroid photograph in the BMW of one of Maxwell's co-defendants, Clifford Jamal. (Tr. 357-59.) Several other witnesses corroborated this evidence. The defendant did not put on a case.

On September 29, 1997, the jury convicted Maxwell on all charges. (Tr. 607-10.) On October 30, 1997, Maxwell was sentenced as a persistent violent felony offender to three concurrent indeterminate prison terms of twenty years to life for each of the first-degree robbery counts and to a concurrent ninety day prison term for the falsely reporting an incident count.

Maxwell filed a notice of appeal on October 31, 1997. However, before pursuing his direct appeal, on August 13, 1998, Maxwell filed a motion, pro se, seeking vacatur of the judgment against him pursuant to New York Criminal Procedure Law § 440.10. In that motion

Maxwell argued: 1) that trial counsel's waiver of his <u>Antommarchi</u> rights was not binding because the record did not indicate that he had been advised of his rights or knowingly waived them, 2) that he was denied due process, his right to confrontation, and a fair trial because the state violated <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), by failing to preserve pictures of the impounded car and allowing it to be sold, and 3) that his right to effective assistance of counsel was violated because his trial counsel had failed to recognize a <u>Miranda</u> violation, failed to object to the <u>Brady</u> violation committed by the prosecution, failed to request a charge on circumstantial evidence, and failed to establish that Maxwell owned a gray BMW, not a brown BMW.  The Supreme Court denied the motion as procedurally defective, explaining that those issues are properly brought on appeal.  <u>People v. Maxwell</u>, No. 2387/96, slip op. (N.Y. Sup. Ct. Nov. 25, 1998).  Maxwell moved for reconsideration on December 8, 1998 and on March 1, 1999, his motion was denied.  <u>People v. Maxwell</u>, No. 2387/96, slip op. (N.Y. Sup. Ct. Mar. 1, 1999).  Maxwell sought leave to appeal this decision on December 29, 1998 and his request was denied on April 13, 1999.  <u>People v. Maxwell</u>, 98-11232, slip op. (N.Y. App. Div. Apr. 13, 1999).

On April 30, 2002, Maxwell, represented by counsel, pursued his direct appeal.  He argued that he was denied:  1) a fair trial because of the introduction of evidence establishing his decade old arrest for robbery with his co-defendant, 2) a fair trial because the jury did not receive an instruction that they should not consider that conviction as proof of his predisposition to commit robbery, 3) effective assistance of counsel because a) counsel failed to seek dismissal on speedy trial grounds of an expired misdemeanor count that provided the basis for the introduction of his prior uncharged crime, b) counsel did not seek a jury instruction prohibiting

improper consideration of the uncharged conduct, c) counsel failed to seek a curative instruction for the prosecution's summation, and d) counsel contradicted, on the record, Maxwell's assertion that he did not own or operate the brown car used by the escaping robbers.  Maxwell's appeal was denied on November 4, 2002.  People v. Maxwell, 750 N.Y.S.2d 97 (N.Y. App. Div. Nov. 4, 2002).  On December 6, 2002, Maxwell sought leave to appeal the decision of the Appellate Division.  The Court of Appeals denied leave on February 18, 2003.  People v. Maxwell, slip op. (N.Y. 2003).

On June 19, 2003, Maxwell filed a pro se motion to set aside his sentence pursuant to New York Criminal Procedure Law § 440.20.  In that motion, Maxwell argued that:  1) he was denied his procedural due process right when he was not provided with his prior felony statements prior to sentencing, and 2) he was denied effective assistance of counsel at sentencing because of counsel's failure to object to the constitutionality of his predicate felonies.  His motion was denied on December 18, 2003.  People v. Maxwell, No. 2387/96, slip op. (N.Y. Sup. Ct. Dec. 18, 2003).  On January 13, 2004, Maxwell sought leave to appeal this decision to the Appellate Division.  His application was denied on May 27, 2004.  People v. Maxwell, No. 2387/96, slip op. (N.Y. App. Div. May 27, 2004).

Maxwell filed a second § 440.10 motion on November 15, 2003.  In that motion, he argued that: 1) he was denied his right to a fair trial because the prosecutor and the witnesses misrepresented that they had made a station house identification of defendant, 2) he was denied a fair trial because the car used in the robbery was impounded by the police and the photographs of the car were not preserved, and 3) he was denied effective assistance of counsel because counsel did not object to the lack of preservation of the car.  His motion was denied on April 30,

2004.  <u>People v. Maxwell</u>, No. 2387/96, slip op. (N.Y. Sup. Ct. Apr. 30, 2004).  Maxwell sought

leave to appeal the decision to the Appellate Division on May 28, 2004.  His leave application

was denied on August 9, 2004.  <u>People v. Maxwell</u>, No. 2004-05209, slip op. (N.Y. App. Div.

Aug. 9, 2004).

Maxwell timely filed his petition for a writ of habeas corpus on October 15, 2004.  In his

petition, he brings the following claims:  1) Ineffective assistance of counsel for (a) counsel's

failure to seek dismissal of the misdemeanor count on speedy trial grounds, where the

misdemeanor charge served as the basis for admission of uncharged criminal conduct, (b)

counsel's failure to seek an instruction prohibiting consideration of uncharged conduct, (c)

counsel's failure to seek a curative instruction during the prosecution's summation regarding the

prosecutor's comments on Maxwell's silence at trial, (d) counsel's failure to object to the lack of

preservation of the car or pictures of the car used in the crime, (e) counsel's failure to investigate

that the car that Maxwell owns is a gray BMW, and therefore does not match the car used in the

robbery and his failure to defend the case on that basis, and (f) counsel's failure to object to the

constitutionality of Maxwell's predicate convictions; (2) that he was deprived his right to a fair

trial due to the introduction of evidence that he was convicted of a prior robbery with the same

co-defendant; and (3) for prosecutorial misconduct because (a) the prosecutor commented on

Maxwell's silence, and (b) failed to correct a witnesses' representation that petitioner was

identified during a show-up at the police station.

On March 13, 2007, the Court appointed Maxwell counsel in order to further brief the

substantive and procedural issues regarding Maxwell's claim that the prosecutor impermissibly

commented on his failure to testify.  Subsequently, the Court received briefing on this issue from

the parties, which is addressed below.

**II.    Procedurally Barred Claims**

Three of Maxwell's claims for habeas relief must be dismissed for procedural reasons.

First, two of his claims are unexhausted.  Second, another of his claims was held to be

procedurally barred in state court, and there is therefore an independent and adequate state law

ground for decision to which this Court must defer.

A.    Exhaustion

Two of Maxwell's claims, (1) for prosecutorial misconduct based on the prosecutor

commenting on Maxwell's silence at trial, and (2) that Maxwell was deprived of his right to a

fair trial due to the admission into evidence of his prior robbery conviction with the same

codefendant, were not adequately presented to the highest available New York State court, and

are therefore unexhausted.  In order to obtain federal habeas review of a claim pursuant to 28

U.S.C. § 2254, the petitioner must have fairly presented the same claim in the state courts and

have exhausted all possible state remedies.  See Coleman v. Thompson, 501 U.S. 722, 731

(1991); Fama v. Comm'r of Corr. Svcs., 235 F.3d 804 (2d Cir. 2000).  The exhaustion

requirement requires the petitioner to have presented to the "highest state court from which a

decision can be had" and to have presented "both the factual and legal premises of the claim he

asserts in federal court."  Daye v. Attorney Gen. of State of N.Y., 696 F.2d 186, 190 n.3, 191 (2d

Cir. 1982) (en banc); Aparicio v. Artuz, 269 F.3d 78, 89-90 (2d Cir. 2001).  Maxwell has failed

to exhaust two of his claims.

1.    The Prosecutorial Misconduct Claim Based on Comments Regarding
Maxwell's Failure to Testify at Trial

Maxwell's prosecutorial misconduct claim based on the prosecutor commenting on

Maxwell's silence during his summation was never brought in that form in state court.[1]  In his

direct appeal, Maxwell noted that "the prosecutor highlighted appellant's failure to corroborate,

explain, or testify, enticing the jury to draw an improper adverse inference from appellant's

silence."  (Br. for Def.-Appellant, at 39.)  However, Maxwell only made this observation in the

context of a claim that his counsel provided ineffective assistance because he failed to request a

contemporaneous curative instruction from the trial judge.  (Id. at 40.)  Maxwell's counsel now

argues that his prosecutorial misconduct claim was properly exhausted because the Appellate

Division "reached the merits of the ineffective assistance of counsel claim, and, in doing so,

perforce reached the merits of the adverse comment/prosecutorial misconduct claim as well,"

citing to Parron v. Quick, 869 F.2d 87 (2d Cir. 1989).  (Supplemental Br. on Exhaustion, dated

May 17, 2007.)

      Maxwell cites no clear authority for the proposition that a claim can be exhausted if it is

necessarily decided by the state court as an underlying predicate to the determination of another

claim.[2]  Even if this were the law, it is of no help to Maxwell.  The Appellate Division did not

---

[1]The respondent argues that this claim is unexhausted because, even assuming *arguendo*,
that Maxwell raised it before the Appellate Division, he did not raise it in his request for
discretionary review before the New York Court of Appeals.  However, Maxwell's letter request
for leave to Appeal to the Court of Appeals briefly summarizes all of the arguments he made
before the Appellate Division.  Accordingly, Maxwell is deemed have raised in his petition for
review precisely the arguments that he raised before the intermediate appellate court.  See
Galdamez v. Keane, 394 F.3d 68, 74-75 (2d Cir. 2005).  Accordingly, and because the Court of
Appeals denied leave, the Court will analyze the exhaustion question by reference to the
proceedings before the Appellate Division.

[2]The only legal authority Maxwell cites to to suggest that this is a viable legal theory
under the doctrine of exhaustion is Parron.  Although Parron does seem to contemplate the
possibility that a claim could be exhausted if it is necessarily decided pursuant to the
determination of another claim, that is not the holding of the case.

necessarily decide the propriety of the prosecutor's remarks in order to rule that Maxwell received effective assistance of trial counsel.[3]  Maxwell's counsel interposed appropriate objections during the summation (with mixed success)[4], to those portions which he reasonably believed made improper references to Maxwell's silence at trial.  In analyzing the ineffective assistance claim before it, the Appellate Division could have merely determined that counsel's conduct in response to the objectionable comments did not fall below "an objective standard of reasonableness."  Strickland v. Washington, 466 U.S. 668, 688 (1984).  If counsel's actions were found to be reasonable, there was no need for the court to resolve whether or not the prosecutor's comments were actually constitutionally improper.  In fact, the Court in this opinion reviews the ineffective assistance of counsel claim without reaching the merits of the underlying prosecutorial misconduct claim.  Thus, here, as in Parron, the mere fact that the factual basis for an exhausted claim is intertwined with the factual basis for an unexhausted claim does not render the latter exhausted, where the latter need not have been reached by the state court deciding the former.  See 869 F.2d at 88-91.

If a claim has not been exhausted and the petitioner no longer has a state forum in which to raise the claim, the claim should be deemed exhausted but procedurally barred from habeas review.  Bossett v. Walker, 41 F.3d 825, 828-29 (2d Cir. 1994); see also Ramirez v. Attorney

---

[3]The Appellate Division merely stated that Maxwell was not deprived of effective counsel, without elaboration.  See People v. Maxwell, 750 N.Y.S.2d 97 (N.Y. App. Div. Nov. 4, 2002).

[4]As Maxwell conceded in his direct appeal, the trial judge did sustain one of counsel's objections and issue a curative instruction.  (Supplemental Br. on Exhaustion, dated May 17, 2007, at 7.)  In addition, during his jury charge the trial judge instructed the jury that Maxwell's failure to testify could not be held against him.  (Trial Transcript at 586.)

Gen. of the State of N.Y., 280 F.3d 87, 94 (2d Cir. 2001). Maxwell cannot now return to state court to bring this on the record claim since he has already taken his direct appeal. See NYCPL § 440.10(2)(c). Thus, this claim is deemed exhausted but procedurally barred from review by this Court.

Federal review of Maxwell's claim remains available if he can "demonstrate cause for the [procedural] default and actual prejudice as a result ... or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750; Fama, 235 F.3d 804. Maxwell has not identified any cause for his failure to raise this claim and thus cannot meet the cause and prejudice standard. Moreover, the Supreme Court has held that the exception for fundamental miscarriage of justice is very limited and extends to cases where the constitutional violation has "probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496; see also Dretke v. Haley, 541 U.S. 386 (2004). Maxwell is unable to show actual innocence, and therefore cannot establish a fundamental miscarriage of justice necessary to obtain habeas review of any of his procedurally barred claims.

2.    The Claim Regarding Evidence of Maxwell's Prior Conviction With the Same Codefendant

In addition, Maxwell has failed to exhaust his claim that he was deprived his right to a fair trial due to the introduction of evidence that he was convicted of a prior robbery with the same co-defendant. The factual basis of this claim was raised in Maxwell's direct appeal, but it was brought pursuant to state law without explicit citation to the federal Constitution. The Second Circuit has recognized four ways in which a habeas petitioner can raise a federal claim, for exhaustion purposes, without citing chapter and verse from the U.S. Constitution: "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases

employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." Daye, 696 F.2d at 194; see also Lugo v. Kuhlmann, 68 F. Supp. 2d 347, 361-62 (S.D.N.Y. 1999). Maxwell failed to meet any of these four criteria with respect to the claim at issue.

In his brief to the Appellate Division, Maxwell failed to cite the federal (or New York state) constitution. Instead, he discussed and cited cases discussing New York state evidentiary common-law pursuant to People v. Molineux, 168 N.Y. 264 (1901) and its progeny. In his letter seeking leave to appeal to the New York Court of Appeals, Maxwell stated, in the introductory paragraph, that this error "violated his constitutional right to a fair trial." However, in the body of the letter he refers to this as "The *Molineux* issue" and again cites only cases discussing New York state evidence law. Maxwell's passing reference to a constitutional right is insufficient in light of the fact that his entire argument exclusively relies on and discusses New York state cases applying New York state law. Moreover, in reviewing this claim, the Appellate Division followed Maxwell's lead and relied exclusively on state law to reject Maxwell's argument. People v. Maxwell, 750 N.Y.S.2d at 98. Additionally, this claim does not call to mind a specific right protected by the federal Constitution nor does it allege a pattern of facts that is well within the mainstream of federal constitutional litigation. Accordingly, this claim is unexhausted.[5] As

---

[5]If the Court were to reach the merits if this claim, it would be rejected. Generally speaking, evidentiary issues do not implicate the federal Constitution, and therefore errors of state evidence law are rarely grounds for habeas relief. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (state law evidentiary issue could not provide the basis for federal habeas relief, "because federal habeas courts do not reexamine state-court determinations on state-law issues"); United States v. Fell, 360 F.3d 135, 144-45 (2d Cir. 2004) (protections of evidence law generally not constitutionally required). "In order to prevail on a claim that an evidentiary error

above, this Court will deem the claim exhausted but procedurally barred from review by this

Court.  Again, in order to obtain review by this Court, Maxwell must establish cause and

prejudice for the default or show that a fundamental miscarriage of justice will result.  As above,

Maxwell has not alleged any cause to excuse this failure and thus cannot satisfy the cause and

prejudice standard.  Moreover, as the Court already observed, Maxwell makes no claim of actual

innocence, and has therefore failed to demonstrate a fundamental miscarriage of justice.

      **B.**        <u>Independent and Adequate State Procedural Ground</u>

In addition to his two unexhausted claims, the Court will not reach the merits of

Maxwell's second claim of prosecutorial misconduct–that the prosecutor improperly failed to

correct witnesses' representations that they had identified petitioner at a station-house show-

up–because it was held to be procedurally barred by the New York courts.  A federal habeas

court may not review a state prisoner's federal claims if those claims were defaulted in state

court pursuant to an independent and adequate state procedural rule, "unless the prisoner can

demonstrate cause for the default and actual prejudice as a result of the alleged violation of

federal law, or demonstrate that failure to consider the claims will result in a fundamental

miscarriage of justice."  <u>Coleman</u>, 501 U.S. at 750.  When a state court says that a claim is "not

preserved for appellate review" and then rules "in any event" on the merits, such a claim is not

preserved.  <u>See</u> <u>Glenn v. Bartlett</u>, 98 F.3d 721, 724–25 (2d Cir. 1996). When a state court "uses

---

deprived the defendant of due process under the Fourteenth Amendment he must show that the
error was so pervasive as to have denied him a fundamentally fair trial."  <u>Collins v. Scully</u>, 755
F.2d 16, 18 (2d Cir. 1985) (citing <u>United States v. Agurs</u>, 427 U.S. 97, 108 (1976)).  Here,
Maxwell failed to demonstrate that the trial court erred as a matter of New York state law when
it admitted the evidence in question, much less demonstrate that he was denied a fundamentally
fair trial as a result.

language such as 'the defendant's remaining contentions are either unpreserved for appellate review or without merit,' the validity of the claim is preserved and is subject to federal review." Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810 (2d Cir. 2000). Claims that are disposed of by the state court using this "either/or" language are entitled to AEDPA deference. Jimenez v. Walker, 458 F.3d 130, 146 (2d Cir. 2006).

The claim at issue was raised in Maxwell's second § 440.10 motion. In an order dated April 30, 2004, the court dismissed all of Maxwell's claims in that motion as "procedurally barred." People v. Maxwell, No. 2387/96, slip op. (N.Y. Sup. Ct. Apr. 30, 2004). The claim was held to be barred under New York state law because it is an "on the record" claim that was not raised on direct appeal. See N.Y.C.P.L. 440.20(2)(c). Maxwell does not claim any cause for his procedural default and thus cannot meet the cause and prejudice standard. Additionally, as is noted above, Maxwell is unable to show that he is actually innocent, and therefore cannot establish a fundamental miscarriage of justice necessary to obtain habeas review of this claim. Accordingly, the Court will not reach the merits of this claim.

## III. The Ineffective Assistance of Counsel Claims

The only remaining claims are Maxwell's contentions that he was denied the effective assistance of counsel. The respondent concedes that none of these claims are unexhausted or are procedurally barred. (Aff. and Mem. of Law in Opp'n to Pet., at 31.) Accordingly, they will be addressed on the merits.[6]

### A. AEDPA Standard

---

[6] In fact, as will be discussed below, one of Maxwell's ineffective assistance of counsel claims seems to be procedurally barred. In any event, it is without merit.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the state's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim."  Sellan v. Kuhlman, 261 F.3d 303, 313 (2d Cir. 2001).  Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412–13 (2000) (O'Connor, J., concurring and writing for the majority in this part).  Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.  Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.  In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial

incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

B.    Ineffective Assistance of Counsel Standard

The Sixth Amendment of the Constitution of the United States provides, in part, that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defense." The right to counsel is "the right to effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970); Campusano v. United States, 442 F.3d 770, 773 (2d Cir. 2006). In order to prevail on an ineffective assistance of counsel claim, a petitioner must meet the two pronged test articulated by the Supreme Court of the United States in Strickland v. Washington. A petitioner must show 1) that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms," and 2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 688, 694; see also Rompilla v. Beard, 545 U.S. 374 (2005); Wiggins v. Smith, 539 U.S. 510 (2003). Concerning the quality-of-representation prong, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and, as a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable" because judicial scrutiny of counsel's performance is deferential. Strickland, 466 U.S. at 689-90. However, strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 691. With respect to the prejudice prong, the United States Supreme Court has explained that "reasonable probability" of prejudice means "a probability sufficient to undermine

confidence in the outcome." Id. at 694.

C.    The Claims That Were Raised On Direct Appeal

In deciding Maxwell's direct appeal, in which all but one of Maxwell's ineffective assistance of counsel claims were raised, the court stated that "[t]he defendant was not deprived of the effective assistance of counsel" and cited to People v. Baldi, 54 N.Y.2d 137 (N.Y. 1981) and other New York state cases. People v. Maxwell, 750 N.Y.2d 97 (N.Y. App. Div. 2002). Under the Baldi standard, an ineffective assistance of counsel claim will be denied "so long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation." Baldi, 54 N.Y.2d at 147. The Baldi standard and the federal Strickland standard have different prejudice prongs. Under Strickland, when counsel's performance is determined to be constitutionally deficient, an ineffective assistance of counsel claim is established if there is a "reasonable probability" the outcome would have been different. Strickland, 466 U.S. at 687. However, the New York standard's prejudice prong looks at the "fairness of the process as a whole rather than [any] particular impact on the outcome of the case." People v. Benevento, 91 N.Y.2d 708, 714 (N.Y. 1998). The Second Circuit, in Henry v. Poole, 409 F.3d 48 (2d Cir. 2005), suggested that the Baldi standard is contrary to the federal standard. Post-Henry, it is unclear that a federal court reviewing a New York state decision which applied the Baldi standard should defer to that decision pursuant to the AEDPA standards. Since the court applied the Baldi standard rather than the Strickland standard in deciding Maxwell's direct appeal, this Court will proceed conservatively and review the ineffective assistance of counsel claims that were brought on direct appeal de novo.

1.     Counsel Failed to Seek Dismissal of Misdemeanor Count Which Served As Premise for the Introduction of Uncharged Conduct on Speedy Trial Grounds

Maxwell argues that his counsel erred by failing to seek dismissal of the lesser included misdemeanor counts in his indictment on speedy trial grounds and that the inclusion of the misdemeanor counts served as the premise for the introduction of uncharged conduct. This argument fails. In his argument on direct appeal, Maxwell states that the judge found that the delay between the indictment and the people's readiness for trial was sixty-one days. (Br. for Def.-Appellant, at 34.) Maxwell argued that this period was greater than the statutory period for readiness for the class B misdemeanor charged in the indictment. (Id.) However, pursuant to New York law, the government had six months from the commencement of the criminal action to try Maxwell since he was "accused of one or more offenses, at least one of which [wa]s a felony." N.Y.C.P.L. § 30.30(1)(a). The period of time that the State took to be ready, 61 days, is well within the six months they were entitled to. Therefore, any motion made by his counsel on speedy trial grounds would have failed and, accordingly, Maxwell cannot sustain a claim of ineffective assistance of counsel on this basis. See United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999) ("Failure to make a meritless argument does not amount to ineffective assistance.").

2.     Counsel Failed to Seek Instruction Prohibiting Consideration of Uncharged Conduct

In his direct appeal brief, Maxwell argues that counsel failed to provide effective assistance of counsel because he failed to "request a clear, complete and forceful limiting instruction" and failed to "object to the weak and incomplete instruction given by the trial court" after the introduction of evidence of uncharged crimes, evidence that Maxwell had been arrested

and convicted with one of his co-defendants. (Br. for Def.-Appellant, at 38.) Maxwell did not provide that court or this one with any more information on why the instruction given by the trial court was flawed. The trial court instructed the jury twice on the limited purpose of the evidence of uncharged conduct. When the state introduced the evidence, the court instructed the jury:

> Ladies and Gentlemen, the testimony that's been offered to you through this witness who just appeared, and the physical evidence that was introduced while he was on the stand, was received for one purpose and one purpose only, and that is, solely on the issue of whether, as the People contend and the defendant denied, the defendant was acting in concert, that is, acting together with, and intentionally aiding other individuals who committed this alleged robbery. That's the only purpose for which this evidence has been offered. And you may consider it for no other purpose. (Tr. 481-82.)

In its final charge to the jury, the court said:

> You will also recall, ladies and gentlemen, that evidence was offered at this trial regarding an entirely unrelated arrest and conviction that occurred in the mid-1980s. As I told you at the time, that evidence was received on one issue, and one issue only, namely whether the defendant, as the People contend and the defendant denies, had the intent to act in concert with other individuals in forcibly stealing property. Thus, you may consider this evidence on that issue, and that issue alone, and for no other purpose. (Tr. 581-82.)

Maxwell has demonstrated no error in this charge. Accordingly, there was no error by counsel in not seeking a "stronger" charge or objecting to the charge as given.

### 3. Counsel Undermined the Defense at Trial by Contradicting Defendant's Assertion that he Did Not Own the Brown Car Used by Escaping Robbers

Next, Maxwell argues that he received ineffective assistance of counsel because his counsel contradicted his defense that he did not own the brown car used by the escaping robbers. His argument is convoluted, at best, but apparently, he claims that on the night in question he was carjacked in his gray BMW and that simultaneously, a brown BMW, which he had previously admitted was registered to him, was abandoned after a separate crime took place, and

taken to the police station. Maxwell, apparently, wanted his counsel to further investigate his purchase of a gray BMW at an unidentified dealership in New Jersey and use the fruits of this further investigation to erect a defense that would have denied Maxwell's ownership of the brown vehicle.

As an initial matter, Maxwell has presented no evidence to suggest that he owned a gray, not a Brown, BMW, either in this court or at his trial, other than his own conclusory and wholly unsupported assertion. Nevertheless, counsel initially investigated this possible defense, but ceased after being unable to locate the supposed New Jersey dealership from which Maxwell claimed to have purchased this separate gray BMW. Thereafter, at trial the State introduced substantial evidence that Maxwell indeed owned the Brown BMW and/or that Maxwell was indeed present and drove the car used during the crime: (1) the police had run a "VIN check" on the brown BMW used in the course of the robbery and determined that it belonged to Maxwell, (2) one of the victims testified that they had followed the robbers from the scene of the crime and identified Maxwell as the getaway driver, (3) Maxwell had told Officer Munoz that he had been the victim of a carjacking, and (4) when Officer Munoz brought Maxwell to the Brown BMW that the police had recovered, Maxwell identified it as his own. Maxwell has not explained why counsel's investigation into the existence of a separate gray BMW was unreasonable under these circumstances, nor has he suggested what counsel should have done differently to "discover" that his BMW was gray, not brown.

In light of the facts available to him and the State's anticipated evidence, counsel made the strategic choice not to further investigate Maxwell's claimed ownership of an unidentified gray BMW purchased from an unidentified New Jersey dealership. He therefore decided not to

defend the case by denying Maxwell's ownership of the brown car used during the course of the robbery. By doing so, counsel successfully had masks and rolls of duct tape, which were discovered in the brown car after it was seized, excluded from trial. In addition, by not challenging the ownership of the brown car, counsel was also able to present a coherent theory of the defense in which Maxwell was carjacked and forced to drive the robbers in his own car away from the scene of the robbery. As is noted above, a strategic choice rarely, if ever, will rise to the level of constitutionally deficient assistance of counsel. See Strickland, 466 U.S. at 689-91. Certainly, the strategic choices at issue here do not. Moreover, to the extent that counsel did not reasonably believe that Maxwell owned a separate gray BMW, pursuing such a defense would have been improper. See Nix v. Whiteside, 475 U.S. 157, 168 (1986) (defendant not entitled under Strickland to counsel willing to aid defendant in presentation of perjurious defense). Accordingly, counsel's performance with respect to the "gray BMW" defense was not constitutionally deficient.

Maxwell also alleges a related failure of his counsel, that his counsel failed to object to the absence of photography of the car seized.[7] In his first § 440 motion, Maxwell argued that if the photographs of the seized car would have been preserved, they would have shown that he "owned a Gray, 1981, 2rd. BMW, which was not "Marron" (BROWN) as the people's witnesses

---

[7] Respondent seems to have missed this claim as it is not addressed in the opposition brief. In addition to failing on the merits, it is procedurally barred. The claim was included in Maxwell's second § 440 motion. The court stated that the claims in that motion were without merit and "in any event, procedurally barred." People v. Maxwell, No. 2387/96, slip op. (N.Y. Sup. Ct. Apr. 30, 2004). As was explained above, this alternative language is read as a procedural bar sufficient to preclude review by this Court. Maxwell does not allege cause and cannot show that a fundamental miscarriage of justice would result if this Court does not review this claim.

testified to." First, this statement is illogical. The pictures would have shown the color of the apprehended vehicle. They would not have revealed anything regarding the possible existence of a separate gray car.[8] Second, in any event, the Court has already concluded that counsel made the reasonable strategic choice to pursue a different theory of the defense–that Maxwell was carjacked and did drive the brown BMW, but unwillingly. Accordingly, counsel did not err in failing to secure such a photograph, which would have had little probative value even if counsel had pursued the "gray BMW" defense, and had absolutely none after he decided not to.

4.    Counsel Failed to Seek Curative Instruction During Summation When the Prosecutor Commented on Maxwell's Silence

Maxwell's next ineffective assistance claim is that counsel failed to seek a curative instruction when the prosecutor commented on Maxwell's silence. This claim is without merit, because counsel reasonably responded to the prosecutor's comments. When the prosecutor asked "How does [Maxwell] explain Corey Howell's photograph in the trunk of his car?" counsel objected and his objection was overruled. (Tr. 554.) Maxwell's complaint that counsel did not seek a curative instruction does not make sense given that the objection was overruled. Similarly, when the prosecutor argued to the jury that Maxwell offered "no reasonable explanation" for why he "was sitting in a car in front of a Car Service at 2 A.M. in the morning," counsel objected and his objection was overruled. (Tr. 561.) Again, Maxwell's complaint that counsel did not seek a curative instruction is illogical. When the prosecutor made the statement during his summation that "it was defendant who did not testify," counsel immediately objected

---

[8] In his first § 440 motion, Maxwell's argument is that the car that was impounded was his gray BMW. Thus, the argument seems to be that the brown car used in the robbery was never located. (Aff. in Supp. of Mot. at ¶ 3-4.) His argument is muddled as he states a page later that it was the brown car which was impounded. (Id. at 5.)

and the court sustained the objection and issued a curative instruction.[9]

Counsel's reactions to the prosecutor's comments do not rise to the level of constitutionally deficient performance within the meaning of <u>Strickland</u>.  First, it was a reasonable professional decision for counsel not to continue to press the objections on which he was overruled.  It is quite possible that, after being overruled, counsel made the reasonable decision that, no matter how meritorious he believed his overruled objection to be, he had preserved it for appeal, and pressing the issue was unlikely to do anything but anger an already unreceptive judge.  Second, when his objection was sustained and the judge gave his limiting instruction, counsel could have reasonably determined that further objections to the propriety of the judge's limiting instruction would do more practical harm than good under the circumstances.  Accordingly, counsel's performance in reacting to the prosecutor's comments was not deficient.

D.      The Claim That Was Raised in Maxwell's 440.20 Motion

Maxwell's allegation that his counsel was ineffective because his counsel failed to object to the constitutionality of his prior 1983 guilty plea–which was one of two predicate felonies for the purposes of sentencing in the instant matter–was raised in his motion to vacate the sentence made pursuant to N.Y.C.P.L. § 440.20.  That court ruled that his plea in his predicate conviction was valid and thus, counsel had not made an error of constitutional proportions.  <u>People v.</u>

_____

[9]The Court acknowledges the fact that the trial judge's contemporaneous jury instruction was not adequate to address the problems raised by the prosecutor's comments.  It bears noting, however, that the trial judge ultimately correctly instructed the jury on this point in his jury charge, which immediately followed the people's summation.  In this latter charge, the judge stated that "the fact that [Maxwell] did not testify is not a factor from which any inference unfavorable or against him may be drawn."  (Trial Transcript at 586.)

Maxwell, No. 2387/96, slip op. (N.Y. Sup. Ct. Dec. 18, 2003).  Because the 440.20 court

expressly determined that counsel had not made any unprofessional errors–the first prong of the

Strickland analysis–it disposed of this claim using the federal constitutional standard.  Cf.

Jackson v. Edwards, 404 F.3d 612, 621 (2d Cir. 2005) (federal claim exhausted even if only state

constitutional law presented to state court, where the state and federal constitutional standards

are sufficiently similar).  Accordingly, the state court's determination as to this claim is entitled

to AEDPA deference.

In support of his claim that counsel was ineffective, Maxwell has argued in his 440.20

motion and before this Court that his 1983 guilty plea was not entered knowingly, voluntarily

and intelligently.  In the § 440.20 motion, he argued that he did not make an intelligent decision

to take the guilty plea because he did not know of the possibility of receiving Youthful Offender

status.  (Mem. of Law in Supp. of Mot. to Vacate J., at 19.)  Maxwell also argued in that motion

that he was not informed of all of the rights that he was waiving and that he did not understand

the sentence he faced.  Accordingly, he now argues that his counsel was ineffective for failing to

investigate this plea prior to sentencing and for not objecting to its use as a basis for sentencing

him as a persistent violent felony offender.

A review of the plea minutes from his 1983 case reveals that Maxwell affirmed that he

was voluntarily entering the plea and that he was aware that he was waiving his right to a trial by

jury.  The court deciding Maxwell's § 440.20 motion held that the failure of the court at the plea

proceeding to specifically enumerate all of the rights that defendant was waiving did not render

the plea invalid.[10]  The court therefore held that it was not an error of constitutional proportion for counsel to fail to further investigate or challenge the prior plea.  The state court's decision was neither contrary to nor an unreasonable application of established federal law, as determined by the Supreme Court.  Accordingly, Maxwell cannot make out a claim for ineffective assistance of counsel on this basis.

## VI.    Conclusion

The petition for a writ of habeas corpus is denied.  No certificate of appealability is granted with respect to any of petitioner's claims, petitioner having made no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c).  The Clerk of the Court is directed to enter judgment and close the case.

SO ORDERED.

Dated: Brooklyn, New York
        May 12, 2008

Carol Bagley Amon
United States District Judge

---

[10]It is also worth noting that Maxwell failed to challenge the 1983 guilty plea at his 1983 sentencing, during his sentencing for his 1986 conviction, at which the 1983 conviction served as a prior felony conviction, and at the 1997 sentencing at issue here.  Thus, even had counsel raised the constitutionality of the 1983 guilty plea at sentencing, the court would likely have held that the challenge was waived under New York law.  See N.Y.C.P.L. § 400.15.(7)(b).